UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

       Plaintiff,    **MEMORANDUM AND ORDER**
              04-CV-4057 (DRH) (ARL)

  - against -

ISHOPNOMARKUP.COM, INC., SCOTT W.
BROCKOP,[1] ANTHONY M. KNIGHT, and
MOUSSA YEROUSHALMI a/k/a MIKE
YEROUSH,

       Defendants.
----------------------------------------------------------------X

**A P P E A R A N C E S :**

**MARK K. SCHONFELD**
**REGIONAL DIRECTOR**
Attorneys for Plaintiff
3 World Financial Center
Room 4300
New York, New York 10281-1022
By: Paul G. Gizzi, Esq.

**CARNEY & MCKAY**
Attorneys for Defendant Anthony M. Knight
1475 Franklin Avenue
Garden City, New York 11530
By: Robert B. McKay, Esq.

**SHAW LICITRA GULOTTA ESERNIO & SCHWARTZ**
Attorneys for Defendants Ishopnomarkup.com, Inc. and Moussa Yeroushalmi a/k/a Mike Yoroush
1475 Franklin Avenue
Garden City, New York 11530
By: Douglas T. Burns

---

[1] On October 26, 2006, the Court entered a default judgment against defendant Scott W. Brockop and awarded damages pursuant to the June 21, 2006 Report and Recommendation of Magistrate Judge Arlene R. Lindsay, which was adopted in its entirety.

**HURLEY, District Judge:**

Plaintiff Securities and Exchange Commission ("Plaintiff" or "SEC") commenced this action alleging that defendants Ishopnomarkup.com, Inc. ("Ishop"), Anthony M. Knight ("Knight"), and Moussa Yeroushalmi a/k/a Mike Yoroush ("Yeroush") (collectively, "Defendants") participated in a fraudulent offering of unregistered stock and thereby violated antifraud and registration provisions of the securities law. Plaintiff now moves for partial summary judgment on its claim that Defendants violated subdivisions (a) and (c) of Section 5 of the Securities Act of 1933, 15 U.S.C. §§ 77e(a) and 77e(c) ("Section 5") by failing to file a registration statement with respect to the sale of Ishop stock. For the reasons that follow, Plaintiff's motion is denied.

## *BACKGROUND*

The following facts are undisputed, unless noted. Knight developed the concept of Ishop -- an internet shopping mall offering products directly from manufacturers to consumers at no markup -- and helped form it in or about August 1999. To raise capital, Ishop conducted three private placement offerings of stock. In connection with these private offerings, Ishop distributed confidential offering memoranda ("COMs") to its investors. The COMs contained detailed information about each Ishop stock offering.

The first offering commenced in September 1999. Ishop's COM dated September 21, 1999 states that 5,263,157 shares of common stock were being offered by Ishop for sale at $0.19 per share to "Accredited Investors only pursuant to the exemptions from registration contained in Section 3(b) of the Securities Act of 1933, as amended . . . and Rule 504 of Regulation D . . . ." (Defs.' Ex. B at I, 6.) From October 1999 to early March 2000, Ishop sold

all 5,263,157 shares to approximately 180 investors and obtained proceeds of $999,999.83. (Compl. ¶ 25; Answer ¶ 25.) According to Defendants, Ishop's attorney prepared the September 21, 1999 COM. To support this claim, Ishop proffers a September 28, 1999 memorandum from Smith McCullough, P.C. to Ishop providing that "t[h]e offering is to be made exclusively to accredited investors, pursuant to the federal registration exemption contained in Regulation D, Rule 504 adopted under the Securities Act." (Defs.' Ex. A at 1.)

During March 2000, Ishop solicited investors in a second offering of stock. In this offering, Ishop offered an unspecified number of shares at $0.75 per share. In connection therewith, Ishop again distributed the September 1999 COM to potential investors. (Compl. ¶ 25; Answer ¶ 25.) Ishop sold approximately 735,300 shares to at least 60 investors and obtained proceeds of approximately $550,000.

From approximately April 2000 to July 2000, Ishop conducted a third offering. In connection therewith, Ishop distributed a COM dated February 3, 2000, which stated that Ishop offered a maximum of 5,000,000 shares at $1.00 per share. (Defs.' Ex. E.) The COM also provided that the sale was being offered to "*accredited investors* only pursuant to the exemptions from registration contained in Section 4(2) of the Securities Act of 1933, as amended . . . and Rule 506 of Regulation D adopted under the Securities Act." (*Id.* at 1.) Ishop sold approximately 750,000 shares to approximately 115 investors, and obtained proceeds of approximately $750,000. (Compl. ¶ 32; Answer ¶ 32.)

In total, Ishop sold approximately 6,748,617 shares of stock to at least 355 investors residing in 21 different states. Ishop obtained proceeds of more than $2.3 million. (Compl. ¶ 33; Answer ¶ 33.) Ishop did not file a registration statement with the SEC with

respect to any of the three sales of stock, and there was no registration statement otherwise in effect. (Compl. ¶ 34; Answer ¶ 34.)

According to Defendants, in September 2000, Ishop prepared and filed with the SEC a proposed Registration Statement to bring Ishop public. (Defs.' Rule 56.1 Stmt. ¶ 74.) Over a period of several months, the SEC provided comments and Ishop provided the requested changes and information. (*Id.*) Eventually, the SEC refused to approve the Registration Statement, effectively driving Ishop out of business. (*Id.*)

Plaintiff commenced this securities law enforcement action on September 20, 2004, alleging violations of the registration and anti-fraud provisions of federal securities law. Presently before the Court is Plaintiff's motion for partial summary judgment on its Section 5 claims. For the reasons stated below, Plaintiff's motion is denied.

## *DISCUSSION*

**I.** *Applicable Law and Legal Standards*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all

inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the

underlying burden of proof demonstrates that the non-moving party's evidence is insufficient as a matter of law, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

**II.** ***There are Genuine Issues of Material Fact as to Whether the Offerings Were Exempt from Registration***

    **A.** *Registration Requirements*

Sections 5(a) and (c) prohibit any person from directly or indirectly selling a security in interstate commerce unless it is registered with the SEC or is exempt from registration. 15 U.S.C. §§ 77e(a), (c). The purpose of the registration requirement is to "is to protect investors by promoting full disclosure of information thought necessary to informed investment decisions." *SEC v. Ralston Purina Co.,* 346 U.S. 119, 124 (1953).

"To state a cause of action under Section 5, [the SEC] must show (1) lack of a registration statement as to the subject securities; (2) the offer or sale of the securities; and (3) the use of interstate transportation or communication [or] the mails in connection with the offer or sale." *S.E.C. v. Cavanagh*, 445 F.3d 105, 111 n.13 (2d Cir. 2006) (citation and internal quotation marks omitted). Once the SEC has established a prima facie violation of Section 5, the burden shifts to the defendant to prove an applicable exemption or safe harbor from registration. *Ralston Purina Co.,* 346 U.S. at 126. Registration exemptions are construed strictly to promote full disclosure of information for the protection of the investing public. *Cavanagh*, 445 F.3d at 115.

    **B.** *Plaintiff Has Established a Prima Facie Section 5 Violation with Regard to Each Offering*

Here, it is undisputed that Ishop did not file a registration statement with the SEC

with regard to any of the stock offerings and that no registration statement was otherwise in effect. It is further undisputed that Defendants sold or offered to sell the securities via interstate commerce. Plaintiff has therefore established a prima facie Section 5 violation with regard to each private offering and the burden shifts to Defendants to prove the applicability of an exemption.

Defendants assert that summary judgment is inappropriate because disputed issues of material fact exist as to their eligibility for the exemptions provided for in Securities Act Regulation D, 17 C.F.R. §§ 230.504 and 230.506 ("Rules 504 and 506"). Specifically, Defendants contend the first offering was exempt from registration pursuant to Rule 504, which applies to offerings not exceeding $1 million. Defendants assert that the second and third offerings were exempt from registration under Rule 506, as offerings to accredited investors. Defendants further maintain that they relied upon the advice of counsel that registration was not required with regard to all three offerings. The Court begins by discussing Defendants' arguments with regard to the first offering.

### C. *The First Offering is Not Exempt Pursuant to Rule 504*

Defendants contend that the first offering was exempt from registration under Rule 504. Pursuant to Rule 504, a securities offering is exempt if, inter alia, it is made for an "aggregate offering price" of no more than $1,000,000 over a twelve-month period. 17 C.F.R. § 230.504(b)(2). Here, it is undisputed that the proceeds from the first offering totaled just under $1 million. Nonetheless, Plaintiff argues that the exemption found in Rule 504 does not apply because the three offerings should be viewed in the aggregate under the SEC's "integration" doctrine. Pursuant to principle of integration, multiple transactions are examined to determine

whether they should be treated as a single, unitary transaction:

> Because securities subject to a transactional exemption are exempted on a transaction-by-transaction basis, the possibility exists that an apparently exempt transaction is actually part of a larger offering for which no exemption is available. The concept of "integrating" offerings is intended to prevent an issuer from avoiding registration by structuring a transaction in two or more apparently exempt offerings (or one exempt and one nonexempt offering) when they actually should be considered a single nonexempt transaction.

Louis Loss and Joel Seligman, *Fundamentals of Securities Regulation* 1231-32 (3d ed. 1995); *see also SEC v. Cavanagh*, 1 F. Supp.2d 337, 363 (S.D.N.Y.), *aff'd*, 155 F.3d 129 (2d Cir. 1998). To determine whether separate offerings are to be integrated, the SEC has developed, and courts have applied, a test for integration that consists of five factors:

> whether (1) the different offerings are part of a single plan of financing, (2) the offerings involve issuance of the same class of security, (3) the offerings are made at or about the same time, (4) the same type of consideration is to be received, (5) the offerings are made for the same general purpose.

*Cavanagh*, 445 F.3d at 112 n.17 (quoting Non-Public Offering Exemption, 1933 Act Release No. 33-4552, 27 Fed. Reg. 11,316 (Nov. 16, 1962) and citing *Donohoe v. Consol. Operating & Prod. Corp.*, 982 F.2d 1130, 1140 (7th Cir. 1992)); *see also* 17 C.F.R. § 230.502(a) Note.[2]

In opposing Plaintiff's motion, Defendants state, in conclusory fashion and without citation to authority, that the first offering was exempt from registration pursuant to Rule 504 because it was under $1 million and that there are questions of fact precluding a finding of integration. Defendants, however, fail to identify any such issues of fact. Defendants further

---

[2] Rule 502(a) contains a safe harbor for offerings separated by six months or more. 17 C.F.R. § 230.52(a). Here, it is undisputed that all three offerings occurred within 6 months of each other and Rule 502(a) is therefore inapplicable.

contend that even if the three separate stock offerings are found to be integrated, they would still be exempt from registration pursuant to Rule 506.

Applying the five-factor test, the Court finds that Defendants have failed to proffer any evidence which might raise a genuine issue of material fact as to any of the five factors which, based upon the present record, all favor integration.

It is undisputed that Ishop conducted the three offerings as part of a single, continuous plan to provide financing for Ishop. Further, Defendants do not dispute that all investors bought the same class of security (common stock), at or about the same time (essentially continuously from September 1999 through July 2000), for the same type of consideration (cash). Finally, it is undisputed that the offerings were made for the same general purpose, viz. to develop a shopping mall on the internet. (*See* Knight Aff., dated Dec. 8, 2006 ("Knight Aff."), ¶ 15 ("The proceeds were used to try to make a go of the business.").) In fact both the September 21,1999 COM (applicable to the first two offerings) and the February 3, 2000 COM (applicable to the third offering) provide that the proceeds will be used for identical reasons, viz. to help form Ishop. (Defs.' Exs. B, E (stating that proceeds will be used for such things as web site development, consulting, marketing, and working capital).)

Accordingly, the Court finds that Ishop's three stock offerings meet every factor of Rule 502(a)'s integration test and, therefore, the three allegedly separate offerings should be viewed as one. Viewed in the aggregate, the offerings do not comply with Rule 504's $1 million sales limit and are thus not exempt from registration under Rule 504. *See Cavanagh*, 1 F. Supp.2d at 365 (finding that two allegedly separate transactions should be viewed as one under integration doctrine).

**D.    *There are Genuine Issues of Material Fact as to
Whether the Offerings are Exempt Under Rule 506***

An offering is exempt under Rule 506 if the issuer complies with all the terms and conditions of §§ 230.501 and 230.502, *see* 17 C.F.R. § 230.506(b)(1), and "[t]here are no more than or the issuer reasonably believes that there are no more than 35 purchasers of securities from the issuer in any offering under this section." *Id.* § 230.506(b)(2)(I).  In calculating this number, accredited investors are excluded.  *Id.* § 230.501(e).[3]  Thus, the Rule 506 exemption is available to an unlimited number of accredited investors and up to 35 unaccredited investors.  In addition, under Rule 506, there is no limitation with respect to aggregate offering price.  Loss and Seligman, *supra*, at 1420.

Plaintiff contends that Ishop sold securities to at least 20 unaccredited investors.  Under Rule 502, if the issuer sells stock under Rule 506 to any purchaser who is not an accredited investor, it "shall furnish the information specified in paragraph (b)(2) . . . to such purchaser a reasonable time prior to sale."  17 C.F.R. § 230.502(b)(1).  Paragraph (b)(2) requires an audited balance sheet, dated "within 120 days of the start of the offering."  *Id.* § 230.502(b)(2)(i)(B)(1), (2).  Plaintiff argues that because Defendants "submit no evidence that they provided audited financial statements to unaccredited investors at the time they invested" (Pl.'s Reply at 6), Defendants have "fail[ed] to satisfy their burden of proving the Rule 506 exemption."  (*Id.*)  Thus, the issues before the Court are: (1) whether Defendants sold securities

---

[3] An accredited investor includes "[a]ny natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000" and "[a]ny natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year."  17 C.F.R. § 203.501(a)(5) and (6).

to any unaccredited investors; and (2) if so, whether Defendants provided the requisite audited financial information.

### 1. *The Evidence is Undisputed that Defendants Sold Securities to Unaccredited Investors*

In support of its claim that Ishop sold stock to at least 20 unaccredited investors, Plaintiff submits the declaration of Shannon A. Keyes ("Keyes"), a SEC attorney who worked on the investigation that preceded this action, wherein she states as follows:

> The staff of the Commission has interviewed several investors that purchased iShop stock in the offering that is the subject of this action. Twenty-six iShop investors provided information to the staff about their personal finances. Of those twenty-six investors, twenty investors indicated that they did not meet the definition of 'accredited investor' contained in Rule 501 of Regulation D, 17 C.F.R. § 230.501(a). Specifically, the following investors informed the staff that when they invested in iShop they did not have (either individually or combined with a spouse) a net worth of more than $1 million, 17 C.F.R. § 230.501(a)(5), and did not have net income of more than $200,000 (or more than $300,000 for married couples) during each of the two years prior to investing, 17 C.F.R. § 230.501(a)(6): [listing names of 20 individuals]

(Keyes Decl., dated Dec. 20, 2006 ("Keyes Decl."), ¶ 2.) Attached to the Keyes Declaration are excerpts from the deposition testimony of four of these investors confirming Keyes' assertion about their financial status. (*Id.* Exs. 18-21.)

In response, Defendants do not proffer any evidence with regard to the investors' accreditation status. Instead, they contend that all investors affirmed in writing that they were accredited, that they relied upon these representations, and that "[i]f any investors did not meet this standard, they were fewer than 35 in number." (Defs.' Mem. of Law in Opp'n at 6.) Prescinding for a moment from the issue of Defendants' good faith in relying on these signed

-11-

affirmations, the Court notes that for purposes of the disclosure requirements under the Rule 506 exemption, it is irrelevant that less than 35 purchasers may have been unaccredited. The disclosure requirement applies to *any* unaccredited purchasers and a failure to provide even one unaccredited purchaser with the requisite information may result in the forfeiture of the exemption. 17 C.F.R. § 230.502(b)(1) ("If the issuer sells securities under [Rule 506] to *any* purchaser that is not an accredited investor, the issuer shall furnish the information specified in paragraph (b)(2) of this section to such purchaser a reasonable time prior to sale."). Here, the evidence is undisputed that Defendants sold securities to unaccredited investors. The Court will now turn to a discussion of whether Defendants complied with the financial disclosure requirements under Rule 502.[4]

### 2. *The Evidence is Undisputed That Defendants Failed to Provide Unaccredited Investors With the Requisite Financial Information*

In support of its claim that Defendants failed to provide audited financial statements to unaccredited investors at the time they invested, Keyes states that she has reviewed

---

[4] The evidence proffered by Plaintiff and relied upon by the Court regarding the accreditation status of investors was submitted by Plaintiff for the first time in its reply papers. Nonetheless, the Court finds that is appropriate for the Court to consider such evidence in ruling on the present motion. As an initial matter, the new information directly responds to issues raised in Defendants' opposition papers. In addition, Defendants have made no claim that Plaintiffs' information is inaccurate or that they wish to submit additional evidence to refute the validity thereof. In this regard, Defendants could have moved for leave to file a sur-reply but chose not to. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) ("[I]t is hard for [plaintiff] to claim unfair prejudice now, because she could have claimed surprise in the district court and sought to file a responsive sur-reply."); *Bayway Refining Co. v. Oxygenated Mktg. and Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000) (district court properly relied on evidence submitted with moving party's reply, where, inter alia, record showed that opposing party knew such evidence could refute its claim but "chose not to introduce any evidence" of its own). Although the Court did receive a belated letter by Knight, *see* docket no. 80, his letter adds nothing to this analysis. Under these circumstances, the Court will consider the information contained in Plaintiff's reply papers in ruling on Plaintiff's motion.

the documents that Defendants provided during discovery and has "been unable to locate any documents indicating that iShop provided audited financial statements to investors during the period of the offering that is the subject of this action." (Keyes Decl. ¶ 3.)  She attaches a June 28, 2000 Ishop letter to shareholders noting that Ishop had engaged an accounting firm "to provide an independent audit of the financial records of the Company [which] is expected to be ready for general release within the next few days." (*Id.* Ex. 23.)  Plaintiff argues that this document establishes that Ishop did not have audited financial statements during the period of the offering.

In response to Plaintiff's arguments, Defendants at no time suggest that they complied with the disclosure requirement of Rule 502(b)(2) and, as noted by Plaintiff, there is no evidence in the present record to indicate they did.  In fact, the COMs distributed by IShop for the three offerings contain no audited balance sheets.  Thus, the Court finds that there are no disputed issues of material fact as to this issue and that Defendants failed to comply with Rule 502's disclosure requirements.

### 3. Whether Defendants' Failure to Comply With Rule 502 May be Excused Pursuant to Rule 508

Defendants argue that they prepared thorough and detailed COMs, that they limited stock issuance to investors who affirmed in writing that they met accreditation requirements, and that they relied upon the advice of counsel, who allegedly prepared all of the paperwork connected to the offerings, that all three offerings were exempt from registration.  For all of these reasons, Defendants argue they should be relieved from the disclosure requirements discussed above.

In support of their arguments, both Knight and Yeroush submit affidavits.

Yeroush states as follows:

> With respect to the second and third offerings, they were effectuated as unregistered offerings to accredited investors by and upon the reliance of counsel – Smith & McCullough (principally Theresa Mehringer of that firm), Robert Fletcher, Miles Garnett and Tim Badeaux. As instructed by counsel, copies of the [COMs] were filed with the SEC and with the appropriate states pursuant to applicable Blue Sky laws, and all other requirements of Rule 506 were followed. . . . I placed total reliance upon these professionals and experts, particularly since I had no prior experience with such stock offerings.
>
> . . . .
>
> Each investor in Ishop was provided a [COM] which contained detailed information about Ishop and the stock offering. Each investor signed a Subscription Agreement and Investment Letter in which that investor affirmed his accreditation. It is my belief that fewer than 35 of the investors were not accredited, and that all of the investors were able to, and acknowledged that they did, properly evaluate the investment, and all were alerted to the potential risk associated with the investment.

(Yeroush Aff., dated Dec. 8, 2006, ¶¶ 9-10.) Knight similarly states:

> In addition to attending to the operations of Ishop, we also needed to raise additional working capital through a stock offering. As this was the first occasion in which the principals of Ishop were involved in the issuance of stock, we sought and relied upon the advice of counsel in connection with the law and the mechanics of so doing, while disclosing to counsel all facts pertinent to the offering. Obtaining and relying upon the advice of counsel (Smith McCullough, P.C.), Ishop made a private placement of stock in the company beginning in September 1999. In connection with that offering, Smith McCullough issued a memorandum opinion dated September 29, 1999, a copy of which is submitted herewith as Exhibit A, upon which we relied. The conditions and requirements set forth in that Memorandum opinion were followed by Ishop.
>
> We were advised by our counsel, Smith McCullough, that this offering was exempt from registration pursuant to Rule 504 of Regulation D. The amount of the first offering demonstrates Ishop's intent to stay within the parameters of the exemption

> provided by Rule 504, which limits an unregistered offering to $1 million. . . .
>
> It was also determined by Ishop's counsel that, following the sellout of the first offering, which commenced September 1999, additional shares of Ishop stock could be sold without registration, and linked to the first offering, pursuant to Rule 506 of Regulation D. Submitted herewith as Exhibit C is a copy of an invoice from Smith McCullough dated 1/31/00, which sets forth the details of the work done by that firm for Ishop in January 2000, when a second offering of Ishop stock was done . . . pursuant to Rule 506. . . .
>
> . . . .
>
> Each of the investors was provided with, and signed, a Subscription Agreement and Investment Letter . . . in which the risks were reiterated in bold print, and in which the investor acknowledged having been provided with the [COM], and also acknowledged and represented that the investor was financially qualified (accredited) to purchase stock in Ishop. If there were any investors who did not meet this standard, they were fewer than 35 in number.

(Knight Aff. ¶¶ 4-6, 8.)

Both COMs provide that "[a]n investment must be made pursuant to the Subscription Agreement attached [thereto]" and that Ishop "will accept only the subscriptions of subscribers who are Accredited Investors." (Defs.' Ex. B at 5, Ex. E at 5.) In addition, the Subscription Agreement provides that the "[s]ubscriber acknowledges and represents that he is an Accredited Investor as defined below [setting forth definition of accredited investor]." (Defs.' Ex. F at 2.)

Defendants argue that their good faith reliance on counsel's advice, as well as on the signed representations of the purchasers that they met accreditation requirements, excuses their failure to comply with Rule 502's financial disclosure requirements. In support of their

-15-

argument, Defendants cite cases which reference Rule 508, 17 C.F.R. § 230.508. Rule 508 was adopted in 1989 and provides a safeguard for "insignificant" deviations from the express terms of Regulation D if the error was made in good faith. Rule 508(a) provides in pertinent part as follows:

> (A) A failure to comply with a term, condition or requirement of § 230.54, § 230.505 or § 230.506 will not result in the loss of the exemption from the requirements of section 5 of the Act for any offer or sale to a particular individual or entity, if the person relying on the exemption shows:
>
> > (1) The failure to comply did not pertain to a term, condition or requirement directly intended to protect that particular individual or entity; and
> >
> > (2) The failure to comply was insignificant with respect to the offering as a whole, provided that any failure to comply with paragraph (c) of § 230.502, paragraph (b)(2)(i) and (ii) of § 230.505 and paragraph (b)(2)(i) of § 230.506 shall be deemed to be significant to the offering as a whole; and
> >
> > (3) A good faith and reasonable attempt was made to comply with all applicable terms, conditions and requirements of § 230.504, § 230.505 or § 230.506.

17 C.F. R. § 230.508 (a).

Defendants have produced evidence that they exerted a good faith attempt to comply with all of the strictures of Rule 506. Both Knight and Yeroush have proffered affidavits wherein they claim that only relatives and friends who met the accreditation requirements were contacted to become investors, that each purchaser signed a subscription agreement affirming his or her accreditation, and that they relied on the advice of counsel that all requirements of the exemption had been met. A review of the COMs and subscription agreements demonstrate that all purchasers were provided with detailed information regarding Ishop and the risks involved in

investing.

In addition, the rule Defendants failed to comply with -- Rule 502(b)(2) requiring the furnishing of an audited balance sheet to all unaccredited investors -- is not one of the rules specifically deemed "significant" under Rule 508.[5]  In fact, several cases have applied Rule 508 to facts similar to the ones at hand and have held either that defendant's good faith attempt to comply with this provision presented a genuine issue of material fact or warranted judgment for the defendant.  *See Wright v. Nat'l Warranty Co.*, 953 F.2d 256, 260-61 (6th Cir. 1992) (affirming lower court's finding that securities were exempt from registration; rejecting argument that exemption unavailable because plaintiff not accredited investor where plaintiff "specifically warranted and represented in the subscription agreement" that she was accredited and "any failure to comply with the rules regarding [plaintiff] was harmless error within the meaning of [Rule 508]"); *Pinnacle Commc'ns Int'l, Inc. v. Am. Family Mortgage Corp.*, 417 F. Supp. 2d 1073, 1087 (D. Minn. 2006) ("It is clear that, if Pinnacle sold to non-accredited investors, it did not supply the required information, namely, an audited balance sheet. Similarly, whether, if that violation occurred, it occurred in good faith [under Rule 508], is also best decided by the jury."); *Faye L. Roth, Irrevocable Trust v. UBS Painewebber Inc.*, 323 F. Supp. 2d 1279, 1300-01 (S.D. Fla. 2004) (noting that pursuant to Rule 508, "an issuer will not lose exempt status when there is a 'good faith and reasonable attempt' to comply with the 'accredited investor' provisions if Regulation D"; finding offering of securities was exempt

---

[5] Th failure to comply with Rule 504(b)(2), which limits the aggregate offering price to $1 million for purposes of the Rule 504 exemption, is deemed significant, however.  17 C.F.R. § 230.508(a)(2).  Therefore, the Court will not apply Rule 508 to Defendants' failure to comply with Rule 504(b)(2).

under Rule 506 where record showed that defendant "followed a number of procedures to ensure that the investors were accredited" and investors, who affirmed in writing that they met accreditation requirements, could not "disavow their representations that they were accredited investors").

Plaintiff does not address Rule 508 in its papers. Instead, Plaintiff argues that Defendants' "purported reliance on advice of counsel is not relevant to determine whether they violated Section 5 of the Securities Act because such violations do not require the [SEC] to prove scienter." (Pl.'s Reply at 7.) Regardless of the accuracy of this statement,[6] none of Plaintiff's cases addresses Rule 508.

After careful consideration of the above, the Court finds that, based on the papers submitted, Plaintiff is not entitled to summary judgment on its claim that the three offerings violated Section 5. There remain genuine issues of material fact as to whether these offerings qualify for an exemption under Rules 506 and 508.

*CONCLUSION*

For all of the above reasons, Plaintiff's motion for partial summary judgment is DENIED.

**SO ORDERED.**

---

[6] For example, the only case Plaintiff cites from this Circuit is *SEC v. Softpoint, Inc.*, 958 F. Supp. 846 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 1348 (2d Cir. 1998), wherein the court stated generally that "[s]cienter is not an element of a Section 5 violation." *Id.* at 859-60. *Softpoint* in turn cites *S.E.C. v. Univ. Major Indus. Corp.*, 546 F.2d 1044 (2d Cir. 1976), wherein the Second Circuit stated that in past decisions, it had made clear that "in SEC proceedings seeking equitable relief, a cause of action may be predicated upon negligence alone, and scienter is not required." *Id.* at 1047. Thus, simply because scienter is not required, if the applicable standard is negligence, Defendants' state of mind and good faith attempts to comply may be relevant. Plaintiff's memoranda do not address this issue.

Dated: September 24, 2007
      Central Islip, New York                          /s_____
                                                                   Denis R. Hurley,
                                                                   United States District Judge