UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,                              **MEMORANDUM AND ORDER**
                                                                                   04 CV 4057 (DRH) (ARL)

              - against -

ISHOPNOMARKUP.COM, INC., SCOTT W.
BROCKOP, ANTHONY M. KNIGHT, MOUSSA
YEROUSHALMI also known as Mike Yeroush,

                Defendants.
----------------------------------------------------------------X

**APPEARANCES:**

**SECURITIES AND EXCHANGE COMMISSION,**
3 World Financial Center
Suite 400
New York, New York 10281
By:    Bennett Ellenbogen, Esq.
         Paul G. Gizzi, Esq.
         Shannon A. Keyes, Esq.

**MORITT HOCK & HAMROFF LLP**
Attorneys for Defendant Yeroushalmi
400 Garden City Plaza
Suite 202
Garden City, New York 11530
By:    Randy Zelin, Esq.
         Douglas T. Burns, Esq.

**HURLEY, Senior District Judge:**

The United States Securities and Exchange Commission (the "SEC" or the "Commission") commenced this action against defendants iShopNoMarkup.com, Inc. ("iShop"), Scott W. Brockop, Anthony M. Knight, and Moussa Yeroushalmi, also known as Mike Yeroush ("Yeroush"), based upon their alleged violations of the registration provisions of the securities laws, specifically Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act"), 15

U.S.C. §§ 77e(a), (c), as well as the anti-fraud provisions of the securities laws, which are set forth in Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b); and Rule 10b-5, 17 C.F.R. § 240.10b-5. (Compl. ¶ 9.)

In November 2010, Yeroush consented to the entry of judgment against him. (*See* Endorsed Order, dated December 9, 2010, Docket No. 136.)[1] Pursuant to the Consent Judgment, Yeroush was permanently enjoined from violating Sections 5 and 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5. Yeroush was also ordered to pay disgorgement, pre-judgment interest, and a civil penalty in a total amount of $101,266.58. The Consent Judgment further provided that the Court would "determine whether it was appropriate to enter an order, pursuant to Section 21(d)(2) of the Exchange Act, prohibiting, conditionally or unconditionally, and permanently or for such a time period as the Court shall determine, Yeroush from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act upon motion of the Commission." (*Id.* at 5.)

Pursuant to the Consent Judgment, the SEC has filed the present motion seeking an Order barring Yeroush from serving as an officer or director of a public company. For the reasons set forth below, the Commission's motion is denied.

---

[1] Brockop defaulted and, on October 26, 2006, the Court entered a Judgment against him. (Docket No. 58.) The SEC, iShop, and Knight have completed discovery and are trial-ready.

## BACKGROUND

The Consent Judgment sets forth the following terms applicable to the SEC's motion for an officer and director bar: (1) Yeroush will be precluded from arguing that he did not violate the securities laws, as alleged in the Complaint, (2) Yeroush may not challenge the validity of the Consent Judgment, (3) for purposes of this motion, the Court shall deem the allegations in the Complaint to be true, and (4) the Court "may determine the issues raised in the motion" based upon the parties' submissions "without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure." (*Id.*)

The following factual allegations are taken from the Complaint, the submissions of the parties in connection with the present motion, and the Court's September 24, 2007 Memorandum & Order ("Sept. 2007 Decision"), which denied plaintiff's motion for summary judgment on its claim that all of the defendants violated Section 5(a) and (c) of the Securities Act. (Docket No. 84.)

In August 1999, Knight conceptualized and formed iShop, an internet shopping mall that offered products directly from manufacturers to consumers with no markup in price. (Sept. 2007 Decision at 2.) Yeroush invested $50,000 in iShop in late 1999 and, at iShop's request, became a member of iShop's board of directors. (Decl. of Shannon A. Keyes, Esq., dated Feb. 1, 2011 ("Keyes Decl.") ¶¶ 19-21.) At the time yeroush joined the board of directors, iShop refunded a portion of Yeroush's investment; iShop used funds from subsequent iShop investors in order to make this refund to Yeroush. (SEC's Mem. at 3.) As of January 2000, Yeroush held the position of Executive Director, and he became the President of iShop in approximately March 2000. (Keyes Decl. ¶¶ 16-18.) From March 2000 to September 2000, iShop paid Yeroush a salary of

$42,465.56.  (*Id.* ¶ 24.)

To raise capital, iShop conducted three private placement offerings of stock.  (Sept. 2007 Decision at 2-3.)  While the first offering commenced in September 1999, which was prior to Yeroush becoming involved with iShop (*id.* at 2), the second offering took place in January 2000 while he served as Executive Director.  (Keyes Decl. ¶ 16.)  The third offering commenced in February 2000, while Yeroush was Executive Director, and continued during Yeroush's term as President.  (*Id.* ¶¶ 16-18.)  In connection with these private offerings, iShop distributed confidential offering memoranda ("COMs") to its investors.  The COMs contained "material misrepresentations, or failed to disclose material information, about, among other things, the status of iShop's website, iShop's revenues, iShop's use of investor proceeds, and iShop's operating capabilities."  (SEC's Mem. at 4 (citing Compl. ¶¶ 2, 35-57).)

IShop's board of directors and officers, including Yeroush, created lists of people that iShop representatives could contact to solicit investments.  (Keyes Decl. ¶ 5.)  Yeroush personally met with and solicited potential investors (*id.* ¶ 8) and, in doing so, Yeroush made multiple, material misrepresentations to them (Compl. ¶ 58).  Specifically, Yeroush represented to these potential investors that: (1) iShop would have an initial public offering ("IPO") on a date certain at a specific price, (2) an iShop investment would dramatically increase in value, (3) an iShop investment "carried no risk and was a 'sure thing,'" (4) Merrill Lynch was "'backing' the company," and (5) iShop had projected revenues of between $50 and $70 million per year.  (*Id.* ¶¶ 60-64.)  Contrary to Yeroush's representations, however, iShop had no specific plans to conduct an IPO on any date certain, did not have any investment banks or broker-dealers providing it with their services, and did not have any revenue-generating operations.  (*Id.* ¶ 65.)

4

Moreover, there was no reasonable basis to predict that iShop's stock price would dramatically increase in value in the near future. (*Id.*)

Yeroush was also aware that iShop representatives made telephone calls or sent letters to potential investors throughout the country for the purpose of soliciting their investments in iShop. (Keyes Decl. ¶¶ 9, 15.) These iShop representatives made material misrepresentations to potential investors in order to persuade them to purchase iShop stock. (Compl. ¶ 70.)

## ***DISCUSSION***

The SEC requests an Order barring Yeroush from serving as an officer or director of any public company. Section 20(e) of the Securities Act and Section 21(d)(2) of the Exchange Act give the Court authority to "prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine, any person who violated" Section 17(a) of the Securities Act or Section 10(b) of the Exchange Act "from acting as an officer or director" of any public company "if the person's conduct demonstrates unfitness to serve as an officer or director . . . ." 15 U.S.C. §§ 77t(e) and 78u(d)(2).

As set forth in the Consent Judgment, Yeroush is prohibited from arguing that he did not violate Section 17(a) of the Securities Act or Section 10(b) of the Exchange Act as those violations are alleged in the Complaint. Accordingly, the question before the Court is whether Yeroush's conduct, as set forth in the Complaint and as demonstrated by the parties' submissions to the Court, "demonstrates unfitness to serve as an officer or director" of a public company. *See* 15 U.S.C. §§ 77t(e) and 78u(d)(2).

To determine whether Yeroush is unfit, the Court may consider the following factors: "(1) the egregiousness of the underlying securities law violation; (2) the defendant's 'repeat

5

offender' status; (3) the defendant's 'role' or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995) (internal quotation marks omitted).[2] While the Second Circuit has deemed these factors to be "useful in making the unfitness assessment," it did not hold that "they are the only factors that may be taken into account or even that it is necessary to apply all these factors in every case." *Id.* Overall, the Court has "substantial discretion in deciding whether to impose a bar to employment in a public company." *Id.* The Second Circuit has also "suggest[ed] that, before imposing a permanent bar, the court should consider whether a conditional bar (e.g., a bar limited to a particular industry) and/or a bar limited in time (e.g., a bar of five years) might be sufficient, especially where there is no prior history of unfitness." *Id.* at 142.

### A. *Egregious Nature of the Underlying Violations*

The SEC asserts that Yeroush engaged in egregious violations of the anti-fraud provisions of the securities laws by falsely informing potential investors that iShop "would soon conduct an initial public offering" and by making "baseless predictions about the future value of iShop stock." (SEC Mem. at 6-7.) According to the SEC, these violations "occurred repeatedly [over]

---

[2] When *Patel* was decided, the statutory standard of unfitness was "substantial unfitness to serve as an officer or director" of a public company. *See Patel*, 61 F.3d at 140-41 (quoting 15 U.S.C. §§ 77t(e) and 78u(d)(2)). The Sarbanes-Oxley Act of 2002 changed this standard to "unfitness to serve," thereby "mak[ing] it easier for the SEC to obtain an officer/director bar against securities law violators." *SEC v. DiBella*, 2008 WL 6965807, at *9 n.12 (D.Conn. Mar. 13, 2008) (citing S.Rep. No. 205, 107th Cong. 2nd Sess. 26-27, 53 (2002)). "Notwithstanding this change, courts have continued to cite *Patel* and/or use *Patel* factors in determining whether an officer/director bar is appropriate." *Id.*; *see also SEC v. Leffers*, 289 Fed. Appx. 449, 452 (2d Cir. Aug. 12, 2008) (upholding district court's imposition of an officer and director bar based upon its application of the *Patel* factors).

a period spanning from late 1999 through the summer of 2000." (*Id.* at 7.)

The Complaint alleges that Yeroush made the oral misrepresentations described above to five potential investors. (Compl. ¶¶ 60-64).[3] Taking the allegations in the Complaint as true, which the parties have agreed the Court must do in connection with the present motion, Yeroush has undoubtedly engaged in illegal fraudulent activity, and the Court does not question the seriousness of Yeroush's offenses. This is not, however, a case involving broad-based deception where, for instance, the alleged oral misrepresentations were made to the public at large. *Cf. SEC v. Save the World Air, Inc.*, 2005 WL 3077514, at *16 (S.D.N.Y. Nov. 15, 2005) (misrepresentations were "repeatedly" made to "the investing public"); *SEC v. Robinson*, 2002 WL 1552049, at *1 (S.D.N.Y. July 16, 2002) (fraudulent statements were made "to the general public, through the internet, press releases and newspaper advertisements"). Moreover, while the SEC has presented evidence that Yeroush was aware that iShop representatives were making telephone calls to potential investors (*see* Keyes Decl. ¶ 9), the SEC has proffered no evidence with respect to Yeroush's knowledge as to the content of those conversations, i.e., that Yeroush knew that iShop representatives were providing false or misleading information to investors during those calls.[4]

Finally, with respect to the false and misleading information contained in the COMs, the SEC has not provided the Court with a clear picture as to Yeroush's role in the preparation,

---

[3] The discovery material cited to the Court in connection with the present motion does not provide any further indication as to the exact number of investors to whom Yeroush made oral misrepresentations. (*See* Keyes Decl. ¶ 8 (citing Yeroush Dep. at 151-154).)

[4] By contrast, the Complaint alleges that "Knight provided misleading information to cold-callers to use in their solicitations," and that "Knight would tell the salespeople that iShop was going public by a certain date." (Compl. ¶ 72.)

review, or distribution of the COMs. According to the Complaint, Knight prepared a COM in September 1999, prior to Yeroush becoming involved with iShop, and this COM was distributed in connection with both the first offering (which took place prior to Yeroush investing in iShop) and the second offering. (Compl. ¶¶ 22-26.) In February 2000, Knight prepared another COM, which was distributed to prospective investors in connection with the third stock offering. (*Id.* ¶¶ 28, 29.) While the SEC has proffered evidence that Yeroush, in his capacity as Executive Director, played some role in authorizing the second and third offerings,[5] it has not put forth any direct evidence that Yeroush knew of the misrepresentations contained in the COMs.

Overall, while the Court finds that Yeroush's violations of the anti-fraud provisions and registration requirements of the securities laws were serious, his violations do not rise to the level of "egregiousness" sufficient to support the imposition of an officer and director ban. *Compare Save the World Air, Inc.*, 2005 WL 3077514 at *16 (finding violations egregious when defendant engaged in a "scheme to defraud [investors] through material misstatements and omission of material fact" that were made to the "investing public" and "related to the very core of [the] business"), *and Robinson*, 2002 WL 1552049 at *5 (finding defendant made "flagrant" and "outrageous" misrepresentations to investors that his company had a product to market, ties to

---

[5] The SEC asserts that Yeroush "authorized [the] second offering." (Keyes Decl. ¶ 16.) It appears from the deposition testimony provided that in January 2000 Yeroush signed a resolution of the officers of the corporation, which authorized the second offering. (*See* Knight Dep. at 157-159; Yeroush Dep. at 94-95.) That document has not been provided to the Court. The Court is not altogether clear that the SEC's statement that Yeroush "authorized" the second offering is supported by the record. During Knight's deposition, he acknowledged that Yeroush had signed the resolution but then added: "But [Yeroush] signed this as the executive director, and I don't believe that is an . . . ." (Knight Dep. at 159.) The next page of the deposition testimony has not been provided. Yeroush acknowledged that he signed the resolution, but testified that he had done so only at the direction of iShop's attorney. (Yeroush Dep. at 95.)

certain large telecommunications companies, and reasonable expectations of reaping billions of dollars in sales revenue), *with SEC v. Stanard*, 2009 WL 196023, at *33 (S.D.N.Y. Jan. 27, 2009) (finding no egregious violation when defendant's false accounting gave a "misleading impression" of the company's profits but did not "have the effect of creating false profits, hiding losses, or giving a misleading picture of [the company's] overall financial strength").

### B.  *Repeat Offender Status*

The SEC urges that because "Yeroush's violations occurred repeatedly" between late 1999 and summer 2000, he should be classified as a repeat offender. (SEC's Mem. at 7 (citing *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998).) In the Second Circuit, however, the term "repeat offender" refers to someone who has committed separate violations of securities laws in the past. *See DiBella*, 2008 WL 6965807 at *11 (finding defendant was not a repeat offender because "[i]n prior roles as a director of two separate companies . . . DiBella was never found to have committed securities violations"); *SEC v. Shah*, 1993 WL 288285, at *7 (S.D.N.Y. July 28, 1993) (finding defendant "cannot be considered a 'repeat' securities-law violator" when he "was never involved in any other violations of the securities laws"). Because it is undisputed that Yeroush, prior to the events giving rise to the present litigation, had never violated any securities laws, the Court does not consider him a "repeat offender." This factor weighs heavily against the imposition of an officer director bar. *See Stanard*, 2009 WL 196023 at *33 (finding defendant's "lack of previous securities law violations" to be "particularly relevant" in its balance of the *Patel* factors).

### C.  *Yeroush's Position at the Time of the Fraud*

It is undisputed that Yeroush served as Executive Director and President at the time that

9

the securities law violations occurred, which would tend to weigh in favor of an officer and director bar. *See SEC v. McCaskey*, 2001 WL 1029053, at * (S.D.N.Y. Sept. 6, 2001); *Shah*, 1993 WL 288285 at *7.

### D.     *Scienter*

"'Scienter, as used in connection with the securities fraud statutes, means intent to deceive, manipulate, or defraud, or at least knowing misconduct.'" *SEC v. Kelly*, 765 F. Supp. 2d 301, 319 (S.D.N.Y. 2011) (quoting *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996)). The element of scienter "'can be satisfied by a strong showing of reckless disregard for the truth.'" *SEC v. Tecumseh Holdings Corp.*, 765 F. Supp. 2d 340, 349 (S.D.N.Y. 2011) (quoting *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009)). "Conduct is reckless if it represents an extreme departure from the standards of ordinary care to the extent the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* at 349-50 (internal quotation marks omitted). "Furthermore, an egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of recklessness." *SEC v. Meltzer*, 440 F. Supp. 2d 179, 189 (E.D.N.Y. 2006) (internal quotation marks omitted).

Yeroush's scienter with respect to his oral misrepresentations to the five potential investors identified in the Complaint, and with respect to the registration violations is clear. For the reasons discussed above, however, the SEC has not shown that Yeroush acted with a "high degree of scienter" (*see* SEC's Mem. at 7) with respect to the misleading statements made by iShop telephone solicitors or the misstatements made in the COMs. Indeed, as discussed above, the SEC has not proffered any evidence that Yeroush – as opposed to Knight – knew about or

10

condoned the misleading statements made by the telephone representatives, or that Yeroush reviewed or approved the COMs that were drafted by Knight.

### E. *Economic Stake in the Violations*

It is undisputed that Yeroush had an economic interest in making misrepresentations to potential investors; Yeroush obtained a partial return on his investment and earned a salary from the proceeds of iShop's sale of stock. (*See* Keyes Decl. ¶¶ 19, 21.) Yeroush's economic benefit weighs in favor of the imposition of a bar. *See Stanard*, 2009 WL 196023 at *34.

### F. *Likelihood That Misconduct will Recur*

In recognizing the "loss of livelihood and the stigma attached to permanent exclusion from the corporate suite" that would result from an officer and director bar, the Second Circuit has held that "[a]lthough it is not essential for a lifetime ban that there be past violations, we think that it is essential, in the absence of such violations, that a district court articulate the factual basis for a finding of the likelihood of recurrence." *Patel*, 61 F.3d at 142. Here, the SEC argues that "Yeroush's past illegal conduct when he was in a position of authority at iShop is indicative of the likelihood that he would engage in similar illegal conduct if he is permitted to become an officer or director of a public company." (SEC's Mem. at 8.) The Court disagrees.

Here, "the SEC has not adequately demonstrated that it lacks assurances against future misconduct." *DiBella*, 2008 WL 6965807 at *11. Yeroush's violations occurred approximately twelve years ago; he had not committed any securities law violations before the events in question, and he has not committed any such violations since that time. *See id.* "[C]ourts that have imposed permanent, and even temporary bars, have found the defendants' past and ongoing conduct to clearly demonstrate a likelihood of reoccurrence," *id.*, and the SEC has simply not

shown the existence of any such conduct here. Moreover, the SEC has not explained why the injunctive relief set forth in the Consent Judgment would not sufficiently deter Yeroush from committing any future violations. *See Stanard*, 2009 WL 196023 at *33 (finding it "particularly relevant" that "the injunctive relief already granted will provide a significant deterrent, greatly reducing the likelihood that [defendant], who has had an otherwise unblemished career, will engage in future securities violations as an officer or director"); *Shah*, 1993 WL 288285 at *7 (finding that the "likelihood of future misconduct appears relatively slight" given that defendant "committed no previous securities law violations and that he has been severely punished for the instant misconduct"). Finally, having reviewed Yeroush's declaration, the Court finds that he has expressed remorse and sufficiently accepted responsibility for his actions.

## *CONCLUSION*

After considering each of the factors articulated by the Second Circuit in *Patel*, and in the exercise of its discretion, the Court finds that an officer and director bar is not appropriate in this case. Accordingly, the Commission's motion is denied.

**SO ORDERED.**

Dated: Central Islip, New York
  March 3, 2012                                                                /s/
                                                                     Denis R. Hurley
                                                                     Unites States District Judge